REUBEN S. DENNY *vs.* BENJAMIN DANA & another.

In an action of trover, by the mortgagee of an insolvent debtor, claiming property
under a mortgage executed by the debtor within six months previous to the com-
mencement of the proceedings in insolvency, against the assignee of the debtor,
claiming to hold the property on the ground that the mortgage was void, as having
been made with a view to give a preference to a preëxisting creditor; and evidence
having been given, on the trial, that the debtor was a manufacturer of printed
goods, and, among others, of *mousselines de laine*, and that the plaintiff was a
merchant dealing in dye stuffs, and trading with manufacturers, the debtor as well
as others ; it was held, that the defendant might inquire of a witness, "whether,
previous to the execution of the mortgage, it was a fact, known in the community,
that the printing of *mousselines de laine* was a ruinous business to those engaged
in it ?" in order to show, that the plaintiff had reasonable cause to believe that
the mortgagor was then insolvent.

Where one of the creditors of an insolvent debtor, within six months previous to the
commencement of the proceedings in insolvency, sued out a writ of attachment
against such debtor, and caused all his property to be attached thereon ; and the
debtor, thereupon, in order to obtain a dissolution of the attachment, and to ena-
ble himself to go on with his business, which he was wholly unable to do whilst
the attachment remained, made a mortgage of the property so attached, in favor
of the attaching creditor, and to secure the payment of the debt, on account of
which the attachment was made ; it was held, that the mortgage was nevertheless
void, under the statute of 1841, *c.* 124, § 3, as having been made with an intent "to
give a preference to a preëxisting creditor," provided the mortgagee, when accept

ing such preference, had reasonable cause to believe that the mortgagor was insolvent.

A mortgage of personal property, which, as to some portion of the debt thereby secured, is in contravention of the insolvent laws, is wholly void.

THIS was an action of trover to recover the value of certain articles of machinery, drugs, and dye stuffs, named in the writ, and was tried before *Merrick*, J., in the court of common pleas.

The plaintiff claimed as mortgagee, by virtue of a mortgage of the property to him, by Daily & Battell, on the 17th day of July, 1845, to secure the payment of two promissory notes of the same date, each for the sum of $376·24, and the payment for all drugs, or other goods and chattels, to be sold by the plaintiff to them, after that date. The mortgage purported to convey all the property of the mortgagors, in and about their print works.

In August, 1845, upon the petition of Daily & Battell, the mortgagors, a warrant was issued by the judge of probate for the county of Middlesex for taking possession of their estate, as insolvent debtors; and such further proceedings were had thereon, that the defendants were duly appointed the assignees of their estate, and the mortgaged property came into their hands and was sold by them.

The defendants alleged, that Daily & Battell, at the time of the making of the mortgage, were insolvent debtors; that they made, executed and delivered the mortgage to the plaintiff, to secure a preëxisting debt, and with an intent to give him a preference as a preëxisting creditor; and that the plaintiff had at the same time reasonable cause to believe, that the mortgagors were insolvent; and the defendants contended that for these causes the mortgage was wholly void.

On the trial, it was proved or admitted, that Daily & Battell, at the time of the making and delivery of the mortgage, were in fact insolvent, and that the debt, for which the two notes mentioned in the mortgage were given, was a preexisting debt due from them to the plaintiff. It was also admitted by the defendants, that after the date of the mortgage, and

14 *

before the date of the petition of Daily & Battell, the plaintiff sold them drugs and dye stuffs to the amount of $183·22.

To show that the plaintiff, at the time of the making of the mortgage, had reasonable cause to believe that Daily & Battell were insolvent, the defendants relied upon various circumstances, concerning which evidence was produced upon the trial.

The defendants, amongst other things, produced evidence tending to show, that, a few days prior to the date of the mortgage, the plaintiff had sued out a writ against them, and caused all their property to be attached upon it; that the writ and attachment continued to be in force until the mortgage was made and executed; that Daily & Battell, up to the time of the attachment, had been and were manufacturers, engaged in the business of printing cotton, silk and woollen goods; that a considerable part of their business had been, till a short time before the attachment, that of printing *mousselines de laine;* and that the plaintiff was a merchant in the city of Boston, his business consisting in part of sales to manufacturers, the said Daily & Battell and others, engaged in the business of printing goods. John Daily, one of the firm, having been called as a witness, and examined by the defendants, among other interrogatories proposed to him was the inquiry, "whether, previous to the month of July, 1845, it was a fact known in the community, that the printing of *mousselines de laine* was a ruinous business to those engaged in it?" to which inquiry the plaintiff objected, but the court allowed the interrogatory to be proposed, as the answer might have some tendency, in connection with the other facts, proved in the case, to show that the plaintiff had reasonable cause to believe the mortgagors to be insolvent.

There was evidence in the case tending to show, that Daily & Battell gave the mortgage to the plaintiff to secure the debt to him, in order to enable themselves to procure the dissolution of the attachment, and to go on with their busi-

ness, which they were wholly unable to do, until the attachment was removed from their property.

The counsel for the plaintiff requested the presiding judge to instruct the jury: 1. That if they were satisfied that the mortgage was involuntary, and induced by the pressure of a civil process, and in consequence of the attachment, and to relieve the mortgagors therefrom, and to enable them to go on with their business, it was not a preference within the intent of the statute, and therefore was not void; and, 2. That if the mortgage was given to secure a preëxisting debt, and a debt created subsequently, the plaintiff might be entitled to recover the amount of the debt subsequently created, although the mortgage was avoided as to the preëxisting debt, as a preference in violation of the provisions of the statute.

The presiding judge declined so to instruct the jury, but instructed them, " that if the mortgagors were insolvent when the mortgage was made, and made it to secure a preëxisting debt, and with an intent to give a preference to the plaintiff as a preëxisting creditor, and the plaintiff had then reasonable cause to believe them to be insolvent, the mortgage was void, and was wholly void, and the plaintiff could not hold against the defendants, as assignees of Daily & Battell, any of the property conveyed by it, either to secure the payment of such preëxisting debt, or the debt which accrued to him from his subsequent sales to them; and if the mortgage was made under the circumstances above stated, it was void, although it might also appear to the jury, that the mortgagors were induced to make it by the pressure of the plaintiff's writ, and in consequence of his attachment, or for the purpose of enabling themselves, by the removal of the attachment, to go on with their business, and not from any wish or desire on their part to give the plaintiff a preference or advantage over their other creditors."

The jury, under these instructions, returned a verdict for the defendants, and the plaintiff thereupon alleged exceptions.

*J. C. B. Davis,* (with whom was *C. Allen,*) for the plaintiff. The bill of instructions presents three questions: 1st

as to the inquiry put to the witness ; 2d, as to the validity of the mortgage ; and, 3d, whether the mortgage, if invalid, may not be so in part only, and good in part.

1.  The inquiry put to the witness related only to an immaterial or collateral fact, which could have no other effect than to mislead the jury, and should therefore have been excluded *Commonwealth* v. *Worcester*, 3 Pick. 462, 473 ; *Lapham* v. *Atlas Bank*, 21 Pick. 7, 8 ; 2 Stark. Ev. 39 ; 1 Greenl. Ev. § 52.

2.  The instructions, as to the validity of the mortgage, did not present the question fairly, or rather, not at all ; at any rate, not as the plaintiff had a right to have it presented. The doctrine of the English courts, as laid down in the case of *Thompson* v. *Freeman*, 1 T. R. 155, and confirmed by other authorities, is, that a bankrupt, in contemplation of his bankruptcy, cannot, by his voluntary act, favor any one creditor ; but, if under fear of legal process, he gives a preference, it is evidence that he does not do so voluntarily. Comyns's Dig. (Day's ed.) Bankrupt, (C. 8,) note *g ;* 3 Stark. Ev. (4th Am. ed.) 175 ; Steph. N. P. 569 ; *Worseley* v. *De Mattos*, 1 Bur. 467. The same principle has also been recognized in this state and in New York. *Locke* v. *Winning*, 3 Mass. 325, 329 ; *Ogden* v. *Jackson*, 1 Johns. 370 ; *Phœnix* v. *The Assignees of Ingraham*, 5 Johns. 411. The doctrine is now enacted in England, by the statute of 6 Geo. 4, *c.* 16, and has been reaffirmed in subsequent cases. *Cook* v. *Rogers*, 7 Bing. 438 ; *Reynard* v. *Robinson*, 9 Bing. 717 ; *Belcher* v. *Prittie*, 10 Bing. 408 ; *Mogg* v. *Baker*, 4 Mees. & Wels. 348 ; *Cook* v. *Pritchard*, 5 Man. & Gr. 329 ; *Lindon* v. *Sharp*, 6 Man. & Gr. 895 ; *Green* v. *Bradfield*, 1 Car. & Kir. 449.

The general doctrine of these cases is, that, in order " to determine whether a fraudulent preference has been given by a bankrupt to one of his creditors by a payment, it will be for the jury to say, whether the payment was voluntary, and without any pressure by the creditor, and was made when the debtor knew that he must be a bankrupt, and in contem-

plation of bankruptcy;" and that "in order to constitute pressure, it is not necessary that legal proceedings should have been resorted to, for, if the pressure was such that it overweighed the bankrupt's own inclination, and induced him to pay against his will, that would be sufficient pressure within the bankrupt laws." *Green* v. *Bradfield*, 1 Car. & Kir. 449.

This doctrine, having been recognized in this commonwealth, is equally applicable under our insolvent system; the statutes, by which that system is established, containing nothing to the contrary. The statute of 1838, *c.* 163, § 19, avoids any payment, transfer, or assignment, "with a view to give a preference to any creditor;" the statute of 1841, *c.* 124, § 3, declares, that a certificate of discharge shall be void, if it be proved that the debtor, within six months before the filing of the petition by or against him, shall have made any assignment, &c., of any part of his estate, "intending to give a preference to a preëxisting creditor," and that all preferences so made shall, as to the other creditors, be void; and the statute of 1844, *c.* 178, § 8, provides that no discharge shall be granted or valid, if the debtor, within one year before the filing of the petition, shall pay or secure, in whole or in part, any borrowed money, or preëxisting debt, he having at the time reasonable and sufficient cause to believe himself insolvent. The statutes of 1838 and 1841 relate to an assignment or transfer, made with a view or intent to give a preference; that is to say, an election of one over another, which must necessarily be voluntary; and, without collusion between the parties, there can be no intent. In the act of 1844, the word used is "payment," which implies both intent and collusion. According to the provisions of the statutes of 1841 and 1844, the conveyances thereby prohibited are to have the effect to prevent the granting of the debtor's certificate, or to render it void, if granted; but can it be supposed, that the legislature would attach so severe a penalty to an act, which was not voluntary on the part of the debtor? The plaintiff, then, had a right to have the jury instructed,

that, in order to avoid the mortgage, it must have been voluntary, in the sense already explained. and collusive ; and such instructions were not given.

3. If the mortgage was void as to the preëxisting debts, it was good for the debt subsequently contracted, and to that amount the plaintiff was entitled to recover. There is now no distinction between conveyances void by statute and by the common law. Chit. on C. (5th Am. ed.) 693. And a contract may be good in part and void in part. The rule is thus stated by Mr. Metcalf (23 Am. Jur. 5) : — " If then any part of a contract is valid, it will avail *pro tanto,* though another part of it may be prohibited by statute ; provided the statute does not expressly, or by necessary implication, render the whole void ; and provided also that the sound part can be separated from the unsound." See *Kerrison* v. *Cole,* 8 East, 231 ; *Newman* v. *Newman,* 4 M. & S. 292 ; *Doe* v. *Pitcher,* 6 Taunt. 359 ; *Harrison* v. *Sterry,* 6 Cranch, 289, 301 ; *Oriental Bank* v. *Haskins,* 3 Met. 332 ; *Crowninshield* v. *Kittredge,* 7 Met. 520.

*J. Mason,* for the defendant.

1. The question objected to was not irrelevant. The answer had a tendency to show reasonable cause, on the part of the plaintiff, to suspect or believe the insolvency of the mortgagors. If the business, in which they were engaged, was ruinous, this certainly was a suspicious circumstance ; and if the plaintiff knew it, he must be affected with the consequences of such knowledge. The fact of reasonable cause is almost always an inference from a variety of other facts and circumstances, which, of course, it must be competent for the party to prove ; and evidence, that a particular fact is well known in the community, is admissible to show inferentially, that one who is a member of that community also had knowledge of such fact. 1 Stark. Ev. 29, 32, 34 ; 1 Greenl. Ev. §§ 128, 137, 138 ; *Brander* v. *Ferridy,* 16 Louis. 296.

2. The instructions, relative to the validity of the mortgage, referred to the four points of inquiry indicated by the

statutes, namely, the actual insolvency of the mortgagors; 2, the making of a conveyance by them to secure a preëxisting debt; 3, the intent thereby to give a preference to a preexisting creditor; and, 4, the knowledge of their insolvency by the mortgagors. All these facts being found by the jury, the mortgage was void, notwithstanding the existence of such coercion, as is indicated by the plaintiff's prayer for instructions. The general purpose of the insolvent system is an equal distribution of the debtor's property among all his creditors; and, to effect this object, the provisions of the statutes are very stringent. The only ground, upon which the conveyance of a debtor, in favor of a particular creditor, is made void, is, that it prevents such equal distribution, and is therefore fraudulent in its operation upon all the other creditors; and this is equally the effect of the conveyance, even though there is some degree of compulsion. *Jordan, Pet'r,* 9 Met. 292; *Newton* v. *Chandler,* 1 East, 138, cited in Owen, 25; *Butcher* v. *Easto,* 1 Doug. 295. In most of the cases cited for the plaintiff, the question was whether an act of bankruptcy had been committed; and the compulsion, if any existed, affected only a part of the debtor's property. Steph. N. P. 563; 2 Stark. Ev. 99. In the present case, the conveyance was of all the goods and chattels owned by the debtors, which were connected with their print works.

3. The several statutes of 1838, 1841, and 1844, already referred to, are to be taken and construed together, as constituting one system of proceedings; and the effect of the whole clearly is, to render void a conveyance in contravention of their provisions, although, as to some particular thing embraced in it, if standing alone, it might be good. *Harris* v. *Sumner,* 2 Pick. 129; *Crowninshield* v. *Kittredge,* 7 Met. 520; *Jordan, Pet'r,* 9 Met. 292.

*B. F. Thomas,* also for the defendant, spoke to the second and third points. In the argument for the plaintiff, it is the ulterior and not the immediate object, which the debtor had in view, that is considered. But it is immaterial what the debtor's motive may have been, provided the necessary con-

sequence of his conveyance was a preference in favor of a particular creditor. In legal contemplation, he must be deemed to have intended the natural and probable consequences of his own acts.

It is obvious, that the court could not adopt the language of the instruction prayed for ; for, if the mortgage was really involuntary, it was clearly void ; and the residue of the instruction proposed would be nugatory. This, therefore, was not the sort of coercion which the plaintiff meant ; he desired the court to go further, and to instruct the jury, that if the mortgage was induced by the pressure of civil process, it was void ; that is to say, the plaintiff maintained that an insolvent debtor might make a valid conveyance, with a view to prefer a particular creditor, provided only that the debtor was strongly induced (though not compelled) to do so. But these are the very cases, which it is the purpose of the law to guard against ; cases in which the debtor is under a strong temptation or inducement to make fraudulent preferences ; and it is to prevent the operation of such inducements, that the stringent statutory provisions alluded to were enacted.

As to the consequence, suggested in the argument for the plaintiff, which would result to the debtor from declaring the conveyance void, namely, that the debtor would thereby be deprived of the benefit of a certificate, the answer is, that if so, it is a consequence of the debtor's own voluntary seeking ; inasmuch as by the statute the certificate is not to be affected, provided the debtor have at the time reasonable cause to believe himself solvent.

The mortgage, it is said, may be good in part, and void in part ; but this is impossible in the nature of things. If the property mortgaged were not in its nature susceptible of division, as, for example, if it were a horse, the assignee would be clearly entitled to recover the whole property. If it were susceptible of division, it would still be impracticable, either to ascertain what items were mortgaged for the valid and what for the void part of the debt secured, or, supposing each article to be referable to both, to make a proper apportionment between them.

SHAW, C. J.   This was an action of trover, to recover for the value of certain articles of machinery, drugs, and dye stuffs enumerated in the writ.   The plaintiff claims the property under a mortgage made to him by Daily & Battell, and the defendants claim as assignees of the property of the same firm, under insolvent proceedings commenced after the plaintiff's mortgage was made.   The defendants insist, that the plaintiff's mortgage was void, under the statute of 1841, c. 124, § 3, because it was made within six months before the filing of the petition by the debtors, who were then insolvent, or in contemplation of insolvency, and who thereby intended to give the plaintiff a preference, as a preëxisting creditor; and that the plaintiff, when accepting such preference, had reasonable cause to believe that the debtors were insolvent.

1. The ground of the first exception is, that the judge admitted evidence, to which the plaintiff objected, and which he now contends ought not to have been allowed.   The object of the defendants, in offering the evidence, was to prove that Denny, the plaintiff, had reasonable cause to believe that the debtors were insolvent.   Evidence had already been introduced to show, that the debtors were manufacturers; that they had been engaged in the manufacture of printed goods, and, amongst others, of *mousselines de. laine;* and that the plaintiff was a merchant dealing in dye stuffs, and trading with manufacturers, among whom were the debtors and others.   One of the interrogatories, amongst others, put to a witness, was this: " whether, previous to July, 1845, it was a fact known to the community, that the printing of *mousselines de laine* was a ruinous business to those engaged in it."   This was objected to, but admitted.   It appears to us, that this question was not wholly irrelevant, though perhaps not very important.   The question was, whether the plaintiff had cause to believe the debtors insolvent; and whether he had such cause or not depended upon the credit of the debtors, and upon the manner in which they were regarded and estimated; and if they had been doing an

unprofitable or losing business, and that was generally known in the community, it might have some tendency to prove them to be insolvent, and that the plaintiff had the means of knowing that they were so.

2. The counsel for the plaintiff requested the presiding judge to charge the jury, that if the mortgage was involuntary, induced by the pressure of civil process, and in consequence of the attachment mentioned, that is, an attachment by the plaintiff of all their goods, and made to relieve themselves therefrom, and enable them to go on with their business, it was not a preference within the intent of the statute, and therefore was not void. This direction the judge declined to give. The counsel for the plaintiff now maintains, that he ought to have given it ; and has supported this proposition in a very full and ingenious argument, and a very free citation of English authorities. The court are of opinion, that the adoption of such a direction would have been opposed to the policy and spirit of our insolvent law. The effect of such a doctrine would be, that if a creditor should adopt the old expedient of an attachment on mesne process, and should thereby acquire a lien on the debtor's whole property, and an inchoate right to appropriate it entirely to himself, he might do so, provided the debtor would confirm it by a more permanent lien ; if his motive was thereby to acquire a future advantage to himself, by being assured of the hope of further advances ; whereas the insolvent law provides, (*St.* 1841, *c.* 124, § 3,) that such attachment itself, if made in collusion with the debtor, shall be void ; and, whether collusive or not, shall be void (*St.* 1838, *c.* 163, § 19) in favor of the general creditors, as soon as a proceeding in insolvency commences. The very fact, therefore, of having attached all the debtor's property for a preëxisting debt, is one indication that the plaintiff had cause to know and did know that the debtors were insolvent.

But further; the English bankrupt laws are so different from our insolvent system, that the decisions under the one do not apply with much force to the other. The English bank-

rupt law avoids all transactions, with some slight exceptions, after an act of bankruptcy, though secret, and though considerable time elapses before the issuing of a commission under it. No attachment on mesne process is admissible, and what the effect of such an attachment would be, as an act of coercion on a debtor, cannot appear. Here such an attachment, not dissolved within a short limited time, is itself an act of insolvency, on which creditors may proceed adversely.

But the more material consideration is, that the English bankrupt law looks only to acts of preference, done in contemplation of bankruptcy, and before any act of bankruptcy committed. If the act is not in contemplation of bankruptcy, and is before an act of bankruptcy, it is regarded as done in the ordinary course of business, and the bankrupt law does not reach it.

Under our insolvent law, according to the provisions of the statute of 1841, *c.* 124, § 3, the invalidity of a conveyance by a debtor is placed on other grounds, and made to depend upon a different test. That statute enacts, that no certificate of discharge shall be granted, or, if granted, shall have any effect, if the debtor, within six months before filing the petition, by or against him, shall procure, &c., or, being insolvent, or in contemplation of insolvency, shall make any assignment, &c., intending to give a preference to a preëxisting creditor, unless he shall make it appear that he had reasonable cause to believe himself solvent, &c. ; and that, in such case, the assignee shall recover and hold the property, provided the creditor had reasonable cause to believe that the debtor was insolvent.

Contemplation of insolvency is one of the cases in which a preference shall be avoided, but it is not the only one ; the other is the being in fact insolvent, under the circumstances, and with the incidents mentioned. Actual insolvency of the debtor, and reasonable belief, on the part of the creditor, that he is so, without contemplation of insolvency, constitute a fraudulent preference ; and the purpose may be, to prevent the institution of insolvent proceedings altogether, and thereby defeat the policy of a dissolution of the attachment and

an equal distribution among the creditors. Such a purpose would rather tend to confirm and give effect to the attachment.

But the statute provides, that the acts which it prohibits must be done, with an intention to give a preference. The intent to prefer is essential, but every person is to be presumed to intend the natural and probable consequences of his own acts; and if such acts do, in fact, as this does, give a very large preference, it is competent for the jury to infer the intent. It does not rebut this intent, to show that the debtor has also another motive to the proceeding, namely, an expectation of pecuniary or other future benefit to himself, by means of further loans of money, and being enabled thereby to continue his business.

The court are therefore of opinion, that the presiding judge was not bound to give the first instruction asked for by the plaintiff, and that such instruction would have been erroneous.

3. As to the second instruction, we are of opinion, that, if the conveyance was void as to the preëxisting debt, it was void as to the whole. Such is the general rule. The old insolvent assignments, under the law of Massachusetts, before the passage of the insolvent law, were, to a certain extent, an exception. But the rule, upon which those decisions were founded, stood upon a peculiar footing, which has often been explained, and it does not apply to the present case.

There is a sentence at the close of the instruction which was given, which, if it stood alone and unexplained, might seem incorrect. The judge, after alluding to the various circumstances and the conveyance made in consequence of the pressure of the plaintiff's writ, stated that the conveyance would be void, if made for the purpose of enabling the debtors to remove the attachment and go on with their business, and not from any wish or design, on their part, to give the plaintiff a preference or advantage over their other creditors.

In saying it would be void, though the debtors had no wish or desire to give the plaintiff a preference, we think it is manifest, from the whole charge taken together, that what

he ·meant to say was, that such wish or desire need not be the only motive ; that the sole intent and purpose of the debtors need not be to benefit the creditor ; but that if they secured the property exclusively or nearly so to one creditor, it was in fact a preference, and of course, that they must have intended a preference, as the natural consequence ; and it would not the less avoid such conveyance, that they had benefits to themselves in prospect, and motives of their own, in giving such preference. Thus understood, as we think, from the whole tenor of the charge it was, it was correct, and had no tendency to mislead the jury.

*Exceptions overruled.*